UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 12-64782-fra13 |
| JONATHAN ELDON HUNSAKER and ) | |
| CHERYL LYNN HUNSAKER, ) | |
| ) | |
| Debtors. ) | |
| ) | Adversary Proceeding |
| JONATHAN ELDON HUNSAKER and ) | No. 14-06218-fra |
| CHERYL LYNN HUNSAKER, ) | |
| ) | |
| Plaintiffs, ) | |
| vs. ) | |
| ) | |
| UNITED STATES, ) | MEMORANDUM OPINION |
| ) | |
| Defendant. ) | |

The Plaintiffs seek a judgment against the United States for damages incurred resulting from serial violations of the automatic stay by the Internal Revenue Service. The matter was tried on January 6, 2016. After considering the evidence and testimony of the parties, the Court concludes that the Plaintiffs are entitled to a judgment for damages under 11 U.S.C. § 362(k).

## I. FACTS

Plaintiff Jonathan Hunsaker is a retired Oregon State Police trooper. Plaintiff Cheryl Hunsaker is employed in the business office of Santiam Hospital. Their petition for relief under Chapter 13 of the Bankruptcy Code was filed on November 5, 2012.

Page 1 - MEMORANDUM OPINION

The case was difficult from the outset. Property acquired by the Plaintiffs as their homestead was discovered to be subject to disputed claims by secured creditors, in turn complicated by claims of Marion County, Oregon, that the purchase of the homestead created an unlawful partition.[1] After considerable effort, a plan of reorganization was finally confirmed on September 3, 2014. The automatic stay under 11 U.S.C. § 362(a) became effective when the petition was filed, and remains in effect. The Debtors have made required plan payments since the case was commenced.[2] The Internal Revenue Service was scheduled as a creditor at the time the case was commenced, and received notice of the filing. (See, for example, the certificate of notice filed on November 8, 2012, as docket #10.) The Service filed a proof of claim, in the amount of $9,301, on November 13, 2012.

During the course of the case, while the automatic stay was in effect, the IRS delivered directly to the Plaintiffs four notices, each of which demanded payment, and advised of imminent enforcement action if the payment was not made promptly:

1. December 12, 2013: A notice of intent to levy, and a demand for payment of $9,685.65.

2. February 10, 2014: A notice of levy on Social Security benefits, and a demand for payment of $9,814.28.

3. September 1, 2014: A notice of intent to seize ("levy") debtors' state tax refund "or other property," demanding $10,158.69.

4. December 8, 2014: A levy on Social Security benefits, and a demand for payment of $10,234.25.

Each time Debtors brought the notice to the attention of their attorney. The attorney assured them that the collection efforts were unlawful, and on December 2, 2013, and again on February 10, 2014, wrote to the
// // //

---

[1] For a more detailed description of these issues, see the Court's memorandum opinion filed June 14, 2013, as docket #47 in the main case.

[2] There was a brief lapse: the case was dismissed on August 28, 2013, after the Debtors had failed to file an amended plan as previously ordered. Debtors promptly moved to reopen the case, and an order granting the motion, and setting aside the dismissal, was entered on September 9, 2013.

Page 2 - MEMORANDUM OPINION

Internal Revenue Service advising that the Debtors were in bankruptcy, and asking that the Service cease all collection activity.

Both of the Plaintiffs were adversely affected by the notices. As noted, the case had been a difficult one for them. The stresses naturally inherent to a complex bankruptcy case were exacerbated by the perceived threat of additional collection actions by the Internal Revenue Service. Mrs. Hunsaker, in particular, testified to the onset of migraine headaches within hours of receipt of each of the notices. Each spouse noted signs of tension and anxiety in the other, which in turn added to his or her own stress. The Plaintiffs were especially concerned with the threat to levy on Mr. Hunsaker's Social Security income, because loss of a substantial portion of their income would render their plan of reorganization unfeasible. Although their attorney assured them that the automatic stay prevented the actions threatened by the notices, the effect of the attorney's assurances began to wear thin as the notices continued to come.

## II. ANALYSIS

### A. The Automatic Stay

Code § 362(a)(1) provides that a petition for relief operates as a stay, applicable to all entities, of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case. . . ."

Section § 362(k) provides that an individual injured by a willful violation of the stay shall recover actual damages, including costs and attorneys fees, as well as punitive damages in appropriate circumstances.

The United States concedes that the actions of the Internal Revenue Service described above constituted violations of the automatic stay.

### B. Sovereign Immunity

While admitting that the notices violated the provisions of § 362, the Government asserts that it is immune from claims for damages for emotional distress. Code § 106 provides that

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections. . .362 [along with a host of others].

Page 3 - MEMORANDUM OPINION

. . .

> (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. . . .

The term "governmental unit" includes the United States and its instrumentalities. 11 U.S.C. § 101(27).

The Government's argument is that the waiver of sovereign immunity contained in § 106 does not explicitly provide for an award of damages based on emotional distress. Applying this rationale, however, would swallow up the waiver of immunity altogether. Section 362(k) allows for actual damages; excluding a particular variety or source of the damage because it is not described in § 106 effectively allows the government to escape liability for any form of damages.

In drafting § 106, Congress explicitly excluded punitive damages, but no other variety. It follows that a governmental unit is subject to liability for any type of damages otherwise authorized by the Code.[3]

C. Damages for Emotional Distress

Plaintiffs seek compensation for the emotional distress they sustained as a result of the Government's violations of the automatic stay. Actual damages under 11 U.S.C. § 362(k) includes damages for emotional distress. *Dawson v. Washington Mutual Bank (In re Dawson)*, 390 F.2d 1139, 1148 (9th Cir. 2004).[4]

In *Dawson*, the Court of Appeals established for the first time in this circuit that emotional distress damages are compensable under § 362(k). In order to limit frivolous claims for emotional distress the Court established criteria for ascertaining when such damages are allowable:

> To be entitled to damages for emotional distress under section 362(h) [now (k)], an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate

// // ///

// // //

---

[3] The Plaintiffs originally sought an award of punitive damages. Citing § 106(a)(3), the Court excluded the claim from consideration.

[4] At the time *Dawson* was decided, the damages section under § 362 was at subsection (h). It was thereafter moved to subsection (k).

Page 4 - MEMORANDUM OPINION

a causal connection between the significant harm and the violation of the automatic stay (as distinct, for instance from the anxiety and pressures inherent in the bankruptcy process).

*Dawson* at 1148.

The Court goes on to say that "it must be clear that the individual suffered significant emotional harm. An individual may establish emotional distress damages clearly in several different ways." *Dawson* at 1148. Thus, the Court's analysis requires consideration of whether the Plaintiffs' emotional distress damages were "significant" under *Dawson*, and, if so, whether the damages were clearly established as both significant and caused by the violations.

The Court of Appeals set out the standards described above because "we are concerned with limiting frivolous claims." *Dawson* at 1148. Given that purpose, the Court's use of the term "significant harm" or "significant emotional harm" means simply that assertion of the claim is not frivolous, and that the injury is not trivial or insubstantial. The injuries described by the Plaintiffs at trial, particularly Mrs. Hunsaker's migraine headaches, were clearly established as neither trivial nor insubstantial, and are compensable under the *Dawson* standards.

One of the several methods of establishing emotional distress discussed by *Dawson* is the demonstration of circumstances which "may make it obvious that a reasonable person would suffer significant emotional harm." *Dawson* at 1150, citing to *United States v. Flynn (In re Flynn)*, 185 B.R. 89, 93 (S.D. Ga. 1995). In *Flynn*, the court affirmed a $5,000 award of emotional distress damages based on plaintiff's uncorroborated testimony that she was forced to cancel a child's birthday party because her checking account had been frozen. The *Flynn* court held that "it is clear that it [plaintiff] suffered emotion harm" arising out of these events.

In the instant case, the Plaintiffs received four notices from the Internal Revenue Service, each of which indicated that the Service intended to take steps which would, once carried out, likely defeat their efforts to reorganize their finances through Chapter 13. The notices continued notwithstanding their attorney's efforts to stop them, and it is not unreasonable that they were concerned that the Government might take the action threatened notwithstanding their attorney's assurances.

Page 5 - MEMORANDUM OPINION

The Court of Appeals points out that the harm sustained because of the stay violation must be distinct from the "anxiety and pressures inherent in the bankruptcy process." This requirement may be satisfied by a showing that the stay violation increased or aggravated the stress and anxiety inherent in the underlying proceedings. It is not, however, necessary that plaintiffs provide corroborating evidence, or establish that the violation was egregious. *Dawson* at 1151.

The evidence here sufficiently demonstrates that the "inherent" tension and stress of the Plaintiffs' bankruptcy was exacerbated by the stay violation. The case was progressing well, and a plan was finally confirmed shortly before the fourth notice was sent. Mrs. Hunsaker testified that she suffered from migraines attributable to the notices.

It might be thought that the court's requirement that the harm and causation be "clearly established" enhances the ordinary burden of proof by preponderance of the evidence to clear and convincing evidence. The Court of Appeals does not say as much, and it is just as likely that the court intended only to emphasize its requirement that the claim not be frivolous. However, to forestall doubt, the Court finds that the evidence presented in this case is clear and convincing.

What remains is the issue of the level of damages. The Plaintiffs seek a modest award of $5,000 for the two of them. This circumspect demand is appropriate: while the Court finds that the Plaintiffs have satisfied their burden of establishing that their claim is significant – that is, not trivial or insubstantial – their damages are, compared to many, not overwhelming. Nor is there any reason to find that the Government's actions were egregious: there was, in fact, no evidence as to why the violations took place, and the events are more likely the result of error and oversight than malice. The evidence established that each of the Plaintiffs, suffered harm, and that, of the two, Mrs. Hunsaker's was more intense. Considering all the circumstances, Mrs. Hunsaker should be awarded damages of $3,000, and Mr. Hunsaker $1,000, for a total of $4,000.

### III. SUMMATION

The Plaintiffs have demonstrated by clear and convincing evidence that: (1) the actions of the Internal Revenue Service described herein were in violation of the automatic stay, (2) the circumstances surrounding the violations would obviously cause a reasonable person to suffer significant – that is, non trivial or

Page 6 - MEMORANDUM OPINION

insubstantial – emotional harm, (3) Plaintiffs in fact sustained significant emotional damages as a result of the stay violations, and (4) Plaintiffs should be compensated for those damages in the amount of $4,000.

The foregoing constitutes the Court's findings of fact and conclusions of law. Counsel for Plaintiffs shall, within 14 days of the date of this opinion, submit a form of judgment awarding the sum of $4,000, plus Plaintiffs' reasonable attorney's fees. Counsel shall also submit a statement detailing Plaintiffs' claim for reasonable attorney's fees. The Government may object to the claim for attorney's fees within 14 days of the time the claim is filed and served.

FRANK R. ALLEY, III
Bankruptcy Judge